**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 20, 2012

Lyle W. Cayce
Clerk

No. 11-50371
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

GREGG HERRERA, JR.,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:10-CR-357-1

Before BENAVIDES, STEWART, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Gregg Herrera, Jr., appeals his conditional guilty plea conviction for aiding and abetting possession with intent to distribute marijuana, for which he was sentenced to 63 months of imprisonment. As a condition of his guilty plea, Herrera reserved the right to appeal the denial of his motion to suppress the marijuana seized from the vehicle he was driving when he was arrested.

We review the district court's findings of fact for clear error and the conclusions of law de novo. *United States v. Lopez-Moreno*, 420 F.3d 420, 429

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

(5th Cir. 2005). "[W]e view the evidence in the light most favorable to the party prevailing below, which in this case is the Government." *Id.*

"Generally, the fruits of illegal searches and seizures are inadmissible under the exclusionary rule." *United States v. Lopez-Valdez*, 178 F.3d 282, 289 (5th Cir. 1999). "A border patrol agent conducting a roving patrol may make a temporary investigative stop of a vehicle only if the agent is aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicle's occupant is engaged in criminal activity." *United States v. Jacquinot*, 258 F.3d 423, 427 (5th Cir. 2001). The reasonable suspicion analysis is a fact-intensive test in which the court takes into account the totality of the circumstances while considering factors such as those identified in *United States v. Brignoni-Ponce,* 422 U.S. 873, 884-85 (1975). *Id.*

Here, Border Patrol Agent Jason Denman received an anonymous tip that a vehicle would be crossing the Rio Grande west of Presidio and then spotted Herrera's truck with mud on the fender wells about an hour later west of Presidio on FM 170, a known alien and drug smuggling road along the Rio Grande. The area was sparsely populated, dry, dusty, and desert-like, and there were several places to cross the border illegally through the Rio Grande nearby. It had not rained in the area for weeks. The three other vehicles on the road were all local and had dust on them but not mud. The stop occurred about a mile from the Rio Grande, which forms the border with Mexico. After a check of Herrera's driver's license revealed that he had an outstanding warrant, Agent Denman arrested Herrera, and authorities discovered the marijuana in Herrera's vehicle. The totality of the circumstances prior to the stop show that Agent Denman's suspicion that Herrera's truck had crossed the Rio Grande was reasonable. *See Brignoni-Ponce,* 422 U.S. at 884-85; *Jacquinot*, 258 F.3d at 427. Although Herrera argues that the tip was not singularly sufficient to justify the stop, the tip was one of many factors that supported the reasonableness of the

agent's suspicion. *See United States v. Villalobos*, 161 F.3d 285, 287-91 (5th Cir. 1998).

Herrera argues that the district court's finding that the mud on the truck's fenders was "fresh" was unwarranted. While Agent Denman did not specifically state that the mud was fresh, he did testify that seeing the mud led him to believe that Herrera's truck "had been in some water somewhere," and he stated that the area was dusty and dry. In this context, the district court's finding that the mud was fresh was not an abuse of discretion.

In addition, Herrera contends that Agent Denman acknowledged that there were other sources of water in the area, including local streams, creeks, and hot springs. However, when defense counsel questioned Agent Denman, he stated that he was not aware of one creek and did not know whether another had water year-round. The agent stated that tourists visit Chinati Hot Springs year-round, but he did not say whether they were likely to muddy their vehicles there. There is no dispute that the conditions of the area were dry and dusty, that the environment was desert-like, that it had not rained for several weeks, and that the other vehicles seen on FM 170 that morning were dusty but not muddy. Thus, the mud on Herrera's truck weighs in favor of the stop in this case. *See United States v. Muniz-Ortega*, 858 F.2d 258, 259 (5th Cir. 1988); *United States v. Adams*, 569 F.2d 924, 925 (5th Cir. 1978).

AFFIRMED.