**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**George Woodrow FLANAGAN,**
**Defendant–Appellee.**

No. 95–20468.

United States Court of Appeals,
Fifth Circuit.

March 29, 1996.

Paula Camille Offenhauser, Gaynelle Griffin Jones, James L. Powers, U.S. Attorney's Office, Houston, TX, for plaintiff-appellant.

Thomas J. Bevans, Houston, TX, Joseph M. Rumbaut, Houston, TX, Eduardo Peter Sillas, Houston, TX, for defendant-appellee.

Before KING, WIENER and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

This sentencing guidelines appeal comes to us after remand. The Government appeals the district court's application of the "safety valve" statute, 18 U.S.C. § 3553(f), which allows a court to impose a sentence below the statutory minimum sentence if the court finds that the defendant has met certain enumerated requirements. Concluding that the district court erroneously placed the burden on the Government in regard to the fifth requirement of the safety valve provision, we remand for further limited proceedings.

### I. PROCEDURAL HISTORY

George Woodrow Flanagan, the defendant-appellee, and codefendant Shannon Ray Kiker pleaded guilty to conspiracy to possess with intent to distribute LSD and possession with intent to distribute LSD, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. After finding that Flanagan was a leader or organizer pursuant to § U.S.S.G. § 3B1.1(c), the district court originally sentenced Flanagan to thirty-six months imprisonment. Kiker received a twenty-four month sentence.

The Government appealed those sentences, arguing that the district court had incorrectly calculated the amount of LSD involved in the charged offenses. This Court, citing *Chapman v. United States*, 500 U.S. 453, 460–62, 111 S.Ct. 1919, 1925–26, 114 L.Ed.2d 524 (1991), explained that to determine the mandatory minimum sentence under 21 U.S.C. § 841(b), the weight of the carrier medium must be included in the amount of LSD. We therefore remanded the matter for resentencing to allow the district court to correctly calculate the amount of LSD.

Meanwhile, Congress had enacted a "safety valve" provision that allowed a court to impose a sentence below the statutory minimum if the defendant met five requirements. *See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. On remand, the Government argued that Flanagan should be sentenced to the statutory minimum of 120 months imprisonment. 21 U.S.C. § 841(b). The Government acknowledged that Kiker had qualified for the "safety valve" provision of 18 U.S.C. § 3553(f) and its guideline counterpart U.S.S.G. § 5C1.2, but argued that Flanagan failed to meet the fourth and fifth requirements listed in the provision. Specifically, the district court's previous finding that Flanagan was a leader or organizer and

Flanagan's failure to provide any information to the Government precluded the application of the safety valve provision. In response to the Government's objections, the district court withdrew its previous finding that Flanagan was a leader or an organizer. The court explained that it had found that Flanagan was a leader "to establish a disparity in culpability between Kiker and Flanagan, but [it] didn't intend to establish a 500 percent dispar[i]ty in culpability."

In regard to Flanagan's failure to provide information to the Government regarding the offenses, the district court opined that "the Government can't complain about his lack of answering questions if [it does not] ask him the questions." The district court then applied the safety valve provision of § 3553(f) to avoid the statutory minimum sentence, resulting in a guideline range of 24–30 months. The court sentenced Flanagan to thirty months imprisonment. The Government now appeals Flanagan's sentence.

## II. ANALYSIS

### A. WHETHER GOVERNMENT MUST REQUEST INFORMATION

■ The Government argues that the district court erred in applying the safety valve provision of 18 U.S.C. § 3553(f), which the Sentencing Commission adopted verbatim in U.S.S.G. § 5C1.2.[1] We review a sentencing

court's decision to apply § 5C1.2 for clear error. *See United States v. Rodriguez,* 60 F.3d 193, 195 n. 1 (5th Cir.) (court's refusal to apply § 5C1.2 is a factual finding reviewed for clear error), *cert. denied,* —— U.S. ——, 116 S.Ct. 542, 133 L.Ed.2d 446 (1995). However, a district court's interpretation of the safety valve provision is reviewed *de novo. Id.*

■ The Government argues that the district court should not have applied the safety valve because Flanagan did not satisfy subsection five. Subsection five provides that, by the time of the sentencing hearing, the defendant must have "truthfully provided to the Government all information and evidence" he has regarding the offenses.

At the second sentencing hearing, the Government argued that Flanagan had not complied with subsection five, to which the district court inquired whether the Government had ever asked Flanagan for any such information. The Government responded that although no requests for information had been made, it did not believe that it had the responsibility to do so. The court replied that the Government could not complain regarding Flanagan's "lack of answering questions if you don't ask him the questions."

This Court has not addressed the question whether the Government has the burden of

---

1. The safety valve provision instructs a district court to impose a guideline sentence without regard to any statutory minimum sentence, if the court finds that the following requirements have been met:

   (1) the defendant does not have more than 1 criminal history point ...;

   (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon ... in connection with the offense;

   (3) the offense did not result in death or serious bodily injury to any person;

   (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, ... and was not engaged in a continuing criminal enterprise ...; and

   (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defen-

dant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2.

The amendment to the statute provides that it applies to all sentences imposed on or after the 10th day beginning after the date of the enactment, and the enactment date was September 13, 1994. Pub.L. No. 103–322, § 80001(c). Therefore, this provision was not in effect at the time of Flanagan's original sentencing hearing on November 30, 1993. It was in effect at the time of the second sentencing on May 1, 1995. The Government did not argue at the resentencing that the provision did not apply. We therefore do not address that issue. Nevertheless, without expressing an opinion regarding whether the provision should apply at a resentencing, we note that district courts have found that the provision applies to a resentencing on remand. *See e.g., United States v. Buffington,* 879 F.Supp. 1220, 1222 (N.D.Ga.1995).

attempting to solicit information from the defendant in the context of the safety valve provision. The Fourth Circuit, however, has addressed this specific question and determined that the burden is on the defendant to demonstrate that he has supplied the Government with truthful information regarding the offenses at issue. *United States v. Ivester*, 75 F.3d 182, 185–86 (4th Cir. 1996). In *Ivester*, the Fourth Circuit deemed the language of § 3553(f)(5) "plain and unambiguous" in that it obligated defendants to affirmatively demonstrate that they have provided truthful information to the Government. 75 F.3d at 184–85. The Fourth Circuit also acknowledged that the construction it gave to § 3553(f) was consistent with other Circuits' opinions that had analyzed this provision. *Id.* at 185.[2] *See United States v. Acosta–Olivas*, 71 F.3d 375, 378 (10th Cir.1995); *United States v. Rodriguez*, 69 F.3d 136, 143 (7th Cir.1995). *United States v. Wrenn*, 66 F.3d 1, 3 (1st Cir. 1995).

In *Wrenn, supra,* the defendant argued that he had complied with subsection five when, unbeknownst to him, he was recorded by an undercover agent discussing his plans to distribute cocaine and when he pleaded guilty to the charges against him. The First Circuit rejected this rather innovative argument, explaining that "[s]ection 3553(f)(5) contemplates an *affirmative act* of cooperation with the government. . . ." *Id.* at 3 (emphasis added).

Additionally, in *Rodriguez*, the district court refused to apply the safety valve provision, stating that the defendant had not provided the names of certain persons involved in the offense. 69 F.3d at 143. On appeal, the defendant argued that such a failure should not disqualify him from the application of the safety valve because the court did not hold a hearing on the issue or make a finding that the other persons existed. The Seventh Circuit explained that the defendant

was ineligible for the safety valve because he had furnished no information regarding the offense and that the failure to identify his coconspirators was just an example of the kind of information the defendant failed to provide. If the defendant did not know the identity of the persons referred to by the district court, "then he at least should have communicated that fact to the government in order to qualify for the reduction." *Id.; see also Acosta–Olivas,* 71 F.3d at 379 (opining that defendant must disclose all his knowledge of the offense to the Government, including the conduct of his coconspirators).

Likewise, we conclude that the language of the safety valve provision indicates that the burden is on the defendant to provide the Government with all information and evidence regarding the offense. There is no indication that the Government must solicit the information. Further, the provision explains that if the information is not useful to the Government or if the Government is already aware of the information, the court is not precluded from finding that the defendant has sufficiently complied with subsection five, thus illustrating that the focus of subsection five is on the defendant's providing information, rather than on the Government's need for information.[3]

■ Moreover, as a general rule, the party seeking the adjustment in the sentence is the party that has the burden of proving the facts to support the adjustment. *United States v. Ayala,* 47 F.3d 688, 690 (5th Cir. 1995). It would appear anomalous to place the burden on the Government to solicit information from the defendant in the context of the safety valve provision in cases in which the Government is aware of all the relevant or useful facts of the offense.

■ Accordingly, we hold that the defendant has the burden of ensuring that he has provided all the information and evidence

---

**2.** Judge Hall dissented, opining that § 3553(f)(5) does not require the defendant to initiate contact with the Government. *Ivester,* 75 F.3d at 186 (Hall, J., dissenting). Judge Hall did agree with the majority's opinion that the statute envisioned an affirmative act of cooperation; however, according to Judge Hall, "the affirmative act re-

quired is merely that the defendant open his mouth." *Id.*

**3.** In this respect, the safety valve provision differs from U.S.S.G. § 5K1.1, p.s., which focuses on whether the information is of substantial assistance to the Government.

regarding the offense to the Government. This he must do no later than at the time of the sentencing hearing regardless whether the Government requests such information. In short, "defendants cannot claim the benefit of [the safety valve provision] by the mere fact that the Government never sought them out for debriefing." *Ivester*, 75 F.3d at 185–86.

Because the district court's interpretation of the provision erroneously placed the burden on the Government, it is not clear from the record whether Flanagan was willing to provide the Government with the required information at the time of sentencing. We therefore remand the case for the limited purpose of determining whether the safety valve provision was available to Flanagan. Specifically, the district court should determine whether Flanagan failed to provide the Government with the information based on the court's erroneous interpretation of the provision. *Acosta–Olivas*, 71 F.3d at 380. If so, the court shall allow him the opportunity to comply with the provision as set forth in this opinion and if satisfied that he has so complied, the court may utilize the safety valve provision and reimpose the sentence last imposed. If not, the safety valve statute is not available, and the district court should vacate the sentence last imposed and proceed to resentence the defendant without the benefit of such provision.

## B. LEADER OR ORGANIZER FINDING

As set forth previously, to be eligible for the safety valve provision, a defendant may not be a leader or organizer as defined by U.S.S.G. § 3B1.1. The Government argues that the district court erred when it reversed its initial finding that Flanagan was a leader or organizer. To support its position that the district court erroneously interpreted the guidelines, the Government refers to the court's statement at the sentencing hearing that it previously had found that Flanagan was a leader "to establish a disparity in culpability between Kiker and Flanagan, but [it] didn't intend to establish a 500 percent dispar[i]ty in culpability." In an unconvincing argument intended to circumvent a review under the clearly erroneous standard, the Government contends that the finding should be reviewed *de novo* because it was based on an erroneous view of the law. It appears the Government's core proposition is that the relevant culpability of the defendants is not pertinent to the application of the safety valve provision.

We reject the Government's argument for two reasons. First, this Court will disturb a district court's factual finding regarding whether a defendant was a leader/organizer pursuant to § 3B1.1 only if it is clearly erroneous. *United States v. Barreto*, 871 F.2d 511, 512 (5th Cir.1989). The Government presents no argument that such finding was clearly erroneous. Rather, the Government relies on the statement by the district court which appears to be an explanation for findings made in previously sentencing the defendant. That previous sentence was vacated by this Court. Our remand was a general remand for sentencing, and any findings previously made were not binding on the district court on remand. The district court's explanation of what he did in the previous sentencing does not show a misapplication of the law in the subsequent sentencing.

Second, a defendant's relative culpability is relevant to the application of the safety valve provision.[4] Relying on the legislative history of the safety valve provision, this Court has recognized that the purpose of the "provision was to allow *less culpable defendants* who fully assisted the Government

---

**4.** The Government correctly argues that disparity in sentences between codefendants is not a proper basis for departure from the guideline range. *United States v. Alvarez*, 51 F.3d 36, 39 (5th Cir.1995). However, consideration of such disparity is permissible in determining the *extent* to which the court will depart from the guideline range or the specific sentence within the guideline range. *Id.* at 41. In any event, although we have referred to the safety valve provision as a

"downward departure," *see United States v. Edwards*, 65 F.3d 430, 432 (5th Cir.1995), we do not think that it is a departure per se or at least not the type contemplated in *Alvarez*. Rather than constituting a departure from the guideline range, the safety valve provision allows the court to "impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence." § 3553(f) and § 5C1.2.

to avoid the application of the statutory mandatory minimum sentences." *Rodriguez*, 60 F.3d at 196 (emphasis added) (citing H.R.Rep. 460, 103d Cong., 2d Sess.1994)). Similarly, the Tenth Circuit has opined that "without such a safety valve, for 'the very offenders who most warrant proportionally lower sentences—offenders that by guideline definitions are the least culpable—mandatory minimums generally operate to block the sentence from reflecting mitigating factors.'" *Acosta–Olivas*, 71 F.3d at 378 (quoting H.R.Rep. No. 103–460, 103d Cong., 2d Sess., 1994 WL 107571 (1994)). Thus, if not for the safety valve provision, "the 'least culpable offenders may receive the same sentences as their relatively more culpable counterparts.'" *Id.*

For the foregoing reasons, we decline to hold that the district court's discussion regarding the relative culpability of the codefendants was an erroneous view of the law that resulted in an incorrect application of the sentencing guidelines.

Flanagan's sentence is REMANDED in accordance with the instructions contained in this opinion.