## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-40145

United States Court of Appeals
Fifth Circuit

**FILED**

May 26, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

    Plaintiff - Appellee

v.

ANGELO CARLINN HOLMES,

    Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:15-CR-643-1

Before BARKSDALE, GRAVES, and HIGGINSON, Circuit Judges.
STEPHEN A. HIGGINSON, Circuit Judge:[*]

Angelo Carlinn Holmes was convicted of possession with intent to distribute methamphetamine. The district court sentenced Holmes to the mandatory minimum term of 10-years' imprisonment after finding Holmes ineligible for safety-valve relief. Holmes appealed and we AFFIRM.

I

Holmes was charged with one count of possession with intent to distribute more than 500 grams of a substance containing methamphetamine,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A). The district court found Holmes guilty after a bench trial on stipulated facts.

According to Holmes's Presentencing Report (PSR), Holmes travelled to Texas to visit a woman he had met in New Orleans two months earlier. The woman's friend gave Holmes drugs to smuggle to a bus station in Houston. When Holmes's Greyhound bus stopped at a U.S. Border Patrol checkpoint in Texas, a border patrol agent who suspected that Holmes was concealing drugs patted him down and discovered two bags of a "white powdery substance." Laboratory testing determined that the substance was methamphetamine. The PSR did not describe any other drug trafficking.

The PSR calculated Holmes's total offense level at 29. With his criminal history category of I, Holmes's Guidelines sentencing range was 87- to 108-months' imprisonment, but Holmes was subject to a statutory minimum term of 10-years' imprisonment.

Holmes was first called for sentencing on January 20, 2016. The parties informed the court that Holmes was eligible for relief under the "safety-valve" provision in 18 U.S.C. § 3553(f), which allows courts to disregard the statutory minimum for low-level, nonviolent drug offenders who cooperate with the Government. The Government attorney—who had recently replaced the original prosecutor on the case—informed the court that she believed Holmes had debriefed truthfully with a DEA agent. Because the DEA agent was unavailable that day, the district court postponed Holmes's sentencing so the agent could testify regarding the debrief.

At the rescheduled sentencing hearing, the DEA agent testified that he conducted Holmes's debrief on December 3, 2015, and that he believed that Holmes "was being as truthful as he could." The agent testified that Holmes said that he had met a woman named Cheyenne at a club in New Orleans and that Cheyenne connected Holmes with the drug supplier in Texas. Holmes

admitted that the instant offense was his second load of drugs involving Cheyenne. Holmes said that he sold the first load of drugs "on the streets" in New Orleans, but did not specify where.

The district court asked whether the agent had questioned Holmes about his plans to sell the second load of drugs. The agent responded that he had asked but Holmes "wasn't forthcoming as far as that." The agent elaborated that he "asked [Holmes] where he was going to sell it and he just didn't provide that information." Quoting the relevant statutory language, the district court asked the agent to confirm whether "[Holmes] . . . truthfully provided to the Government all information and evidence the Defendant has concerning the offense or offenses that were part of the same course or scheme." The agent answered that Holmes had not.

After the agent's testimony, the prosecutor argued that the Government had been "misguided in [its] request . . . that the Court allow a safety-valve adjustment . . . ." The prosecutor said she had thought Holmes was just a transporter with no knowledge beyond where he was supposed to pick up and deliver the drugs. Instead, Holmes was a street dealer who had made a prior trip, "which makes it seem less credible that he doesn't know the person who set up this deal . . . ." The prosecutor asked the court to impose the mandatory minimum sentence of 10 years.

Defense counsel asked for "more time . . . to do a follow-up [with the agent,]" which the district court denied after it confirmed that defense counsel's investigator attended Holmes's debrief. The district court allowed defense counsel to consult with Holmes who declined to testify. In light of the DEA agent's testimony, the court denied the requested safety-valve relief. The court explained that it could not in "good conscience" find that Holmes had truthfully provided everything he could when it was clear that Holmes was not

No. 16-40145

merely a transporter but was in fact a seller and that Holmes had not been forthcoming about the details of his planned drug sales.

The court sentenced Holmes to the mandatory minimum of 10-years' imprisonment, explaining, "[t]ruthfully disclosing all that you know is required. Apparently [you were] given that opportunity and [were] not forthcoming, according to the witness. So that's the sentence – basis of the sentence." Defense counsel reiterated her objection to the denial of safety-valve relief.

Holmes now appeals the district court's judgment.

II

We review the district court's legal interpretation of the safety-valve provision de novo and its findings of fact as to the application of the provision for clear error. *United States v. Flanagan*, 80 F.3d 143, 145 (5th Cir. 1996). "A factual finding is not clearly erroneous if it is plausible, considering the record as a whole." *United States v. King*, 773 F.3d 48, 52 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 1865 (2015) (internal quotation marks and citation omitted); *United States v. Contreras*, 597 F. App'x 265, 266 (5th Cir. 2015) (unpublished) ("The district court's finding that [the defendant] was not truthful was plausible in light of the record as whole and not clearly erroneous.").

The safety-valve provision permits a district court to disregard the statutory mandatory minimum sentence under certain drug statutes, including § 841, if the defendant meets five requirements. 18 U.S.C. § 3553(f); *see also* U.S.S.G. § 5C1.2.[1] The defendant bears the burden of showing that he

---

[1] The five safety-valve requirements are:

(1)  the defendant does not have more than 1 criminal history point . . . ;

4

No. 16-40145

satisfies each requirement. *See United States v. Towns*, 718 F.3d 404, 412 (5th Cir. 2013). The only requirement at issue in this appeal is the fifth: whether Holmes truthfully provided "all information and evidence [he had] concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5).

Holmes argues that the district court clearly erred when it denied him safety-valve relief based on its finding that he was not "forthcoming . . . about [his] determined disposition of the drugs." According to Holmes, "[t]he [G]overnment's and the court's inference that Mr. Holmes had some more detailed plan which he refused to share is based merely on speculation and is not a basis for the denial of the safety valve." The Government counters that the district court did not base its denial on speculation, but rather on the DEA agent's testimony that Holmes declined to answer when asked about his planned sale of the drugs.

In support of his argument, Holmes primarily relies on *United States v. Miranda-Santiago*, 96 F.3d 517 (1st Cir. 1996). In *Miranda-Santiago*, the First Circuit held that the district court clearly erred in denying the safety-valve

---

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon . . . in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense . . . ; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . .

18 U.S.C. § 3553(f); *see also* U.S.S.G. § 5C1.2 (reiterating the requirements).

5

reduction. *Id.* at 527–30. The First Circuit explained that "mere conjecture" could not alone bar application of the safety-valve reduction. *Id.* at 529. The court elaborated that the "district court's bare conclusion that [the defendant] did not 'cooperate fully,' absent either specific factual findings or easily recognizable support in the record, cannot be enough to thwart her effort to avoid imposition of a mandatory minimum sentence." *Id.* at 529–30. In a later case, the First Circuit clarified its holding in *Miranda-Santiago*: "*Miranda-Santiago* in no sense suggests that the sentencing court cannot arrive at an independent determination regarding a criminal defendant's truthfulness, based on the evidence before it." *United States v. White*, 119 F.3d 70, 74 (1st Cir. 1997).

Our court has relied on *Miranda-Santiago* as well. In *United States v. Miller*, the Government argued that denial of safety-valve relief was justified by the defendant's supposedly false claim that he first learned how to dry cocaine during his most recent drug offense. 179 F.3d 961, 967 (5th Cir. 1999). Citing *Miranda-Santiago*, we found the Government's assertion that the defendant was untruthful to be "pure speculation," because the only plausible support for this assertion was the defendant's prior drug trafficking experience and the complexity of the cocaine drying process. *Id.* at 968–69.

This case is distinguishable from *Miranda-Santiago* and *Miller*. The district court's denial was not based on "mere conjecture" or "bare conclusion[s]," *see Miranda-Santiago*, 96 F.3d at 529–30, but on specific evidence in the record supporting a finding that Holmes did not "truthfully provide[] . . . all information" about his offense. *See* 18 U.S.C. § 3553(f)(5). Specifically, the district court relied on the DEA agent's testimony that Holmes was not "forthcoming" when asked about his plans to sell the drugs he had purchased. *See United States v. Munera-Uribe*, 192 F.3d 126, 1999 WL 683823, at *14 (5th Cir. Aug. 5, 1999) (unpublished) (affirming denial of safety-valve

relief because the district court had relied on "concrete evidence tending to show [the defendant's] untruthfulness").

Even if we found the agent's testimony to be ambiguous, as Holmes appears to suggest, there is still no basis to second guess the district court. It was Holmes's burden to demonstrate applicability of the safety-valve provision, including that he "truthfully provided . . . all information" about his offense. *See Flanagan*, 80 F.3d at 145–47. Holmes offered no evidence to rebut the DEA agent's testimony, and the district court did not clearly err in relying on that testimony to deny safety-valve relief.

Holmes also argues that "[the agent] did not provide any evidentiary basis to believe that [he] had particular plans for the distribution of the purchased drugs which he refused to share." Again, this argument is unavailing in light of the record. In addition to the agent's testimony that Holmes was not "forthcoming," Holmes admitted to the agent that he had purchased narcotics through Cheyenne's contacts on a previous occasion and then sold the drugs on the streets in New Orleans. Given his admitted recent experience drug trafficking in New Orleans, it was not "mere conjecture" for the district court to infer that Holmes would have some idea about where and how he intended to sell the second load of drugs.

### III

In addition to his appeal of the district court's denial of safety-valve relief, Holmes also appeals his conviction. Holmes argues that the evidence presented at trial was insufficient to support his conviction under 21 U.S.C. § 841 because the Government did not prove (and the district court did not find) beyond a reasonable doubt that he knew the type and quantity of drugs that he conspired to possess. This argument is foreclosed by our precedent. *See United States v. Betancourt*, 586 F.3d 303, 307–09 (5th Cir. 2009).

No. 16-40145

IV

For all the foregoing reasons, we AFFIRM the judgment of the district court.